1
2
3
4
5
6

SEYFARTH SHAW LLP
Robert B. Milligan (SBN 217348)
rmilligan@seyfarth.com
D. Joshua Salinas (SBN 282065)
jsalinas@seyfarth.com
Amy A. Abeloff (SBN 306093)
aabeloff@seyfarth.com
2029 Century Park East, Suite 3500
Los Angeles, California 90067-3021
Telephone:   (310) 277-7200
Facsimile:    (310) 201-5219

7
8

Attorneys for Defendant
SURVEY SAMPLING INTERNATIONAL, LLC

9

10

# UNITED STATES DISTRICT COURT[

11

## CENTRAL DISTRICT OF CALIFORNIA

12

13

RICHARD ODELLO, an individual,

14

Plaintiff,

15

v.

16
17
18

SURVEY SAMPLING
INTERNATIONAL, LLC, a Delaware
limited liability company; and DOES 1
through 10, inclusive,

19

Defendants.

Case No. 2:16-cv-03591-MWF-SK

*[Assigned to the Hon. Michael W. Fitzgerald]*

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER, OR TO STAY**

Date:        July 18, 2016
Time:       10:00 a.m.
Crtrm:      1600 - 16th Floor
Judge:       Hon. Michael W. Fitzgerald

Complaint Filed:    May 4, 2016

20
21
22
23
24
25
26
27
28

27083533v.1

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...................... 2

    A.    SSI's Business ............................................................................ 2

    B.    Plaintiff's Employment With SSI ................................................ 3

    C.    Plaintiff's Resignation From SSI ................................................ 5

    D.    Plaintiff's California Action ........................................................ 5

    E.    SSI's Connecticut Action ........................................................... 5

III.  LEGAL ARGUMENT ........................................................................... 6

    A.    The Mandatory Connecticut Forum Selection Clause Requires Dismissal Or Transfer Of This Action .................................................. 6

        1.    The Forum Selection Clause Is Presumptively Valid and Is Enforceable Here ............................................................... 7

            a.    Plaintiff Cannot Establish That Litigation in Connecticut Is Inconvenient or Improper ........................................ 8

            b.    Enforcement of the Forum Selection Clause Does Not Contravene Any Strong Public Policy of California ............. 9

            c.    Public Policy Favors the Enforcement of the Forum Selection Clause ........................................................ 12

        2.    The Atlantic Marine Analysis Weighs Heavily in Favor of Dismissal or Transfer ........................................................ 13

            a.    Plaintiff's Choice of Forum Bears No Weight ........................... 13

            b.    The Court Need Only Consider the Public Interest Factors In Evaluating the Forum Selection Clause, And Those Factors Do Not Defeat Dismissal or Transfer of This Action ........................................................ 13

    B.    The Court Should Decline Jurisdiction Under The Declaratory Judgment Act .......................................................................... 14

            a.    Dismissing This Action Would Avoid Needless Determination of Connecticut State Law ................................... 16

            b.    Dismissing This Action in Favor of the Connecticut Action Would Discourage Forum Shopping .............................. 17

            c.    Dismissing This Action in Favor of the Connecticut Action Will Avoid Duplicative Litigation and Waste of Judicial Resources ............................................................... 18

i

# TABLE OF CONTENTS
### (Cont'd)

**Page**

C.   Plaintiff Fails To State A Claim For Purported Violations Of
Bus. & Prof. Code Section 17200 ................................................................ 19

D.   This Court Should Stay This Action Pending Resolution Of
The Connecticut Action If This Court Declines To Dismiss Or
Transfer This Action .......................................................................................... 20

IV.   CONCLUSION ................................................................................................ 20

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*AJZN, Inc. v. Yu*,
No. 12–CV–03348–LHK, 2013 WL 97916 (N.D. Cal. Jan. 7, 2013)..................7, 9, 10

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009)...............................................................19

*Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*,
134 S. Ct. 568 (2013)..............................................................1, 6, 12, 13, 14

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)......................................................................................19

*Besag v. Custom Decorators, Inc.*,
No. CV08-05463 JSW, 2009 WL 330934 (N.D. Cal. Feb. 10, 2009) ....................7, 10

*Brillhart v. Excess Insurance Company of America*,
316 U.S. 491, 62 S. Ct. 1173 (1942).................................................14, 15, 16

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585, 111 S. Ct. 1522 (1991)....................................................11, 12

*Colo. River Water Conservation Dist. v. United States*,
424 U.S. 800 (1976)......................................................................................19

*DeFeo v. Procter & Gamble Co.*,
831 F. Supp. 776 (N.D. Cal. 1993) .......................................................15, 17

*Fieldturf USA, Inc. v. Blue Sky Int'l, Inc.*,
No. CIV S-11-2035 KJM-KJN, 2012 WL 4510671 (E.D. Cal. Sept. 30,
2012) ..............................................................................................................16

*First Fishery Dev. Serv. v. Lane Labs USA*,
No. CIV. 97-1069-R, 1997 WL 579165 (S.D. Cal. July 21, 1997).......................15, 17

*Google, Inc. v. Microsoft Corp.*,
415 F. Supp. 2d 1018 (N.D. Cal. 2005)...........................................15, 16, 17

*Gribin v. Hammer Galleries, Div. of Hammer Holdings, Inc.*,
  793 F. Supp. 233 (C.D. Cal. 1992) ........................................................... 15

*Gulf Oil Co. v. Gilbert*,
  330 U.S. 501 (1947) .................................................................................. 13

*Harrison v. Synthes USA Sales, LLC*,
  No. 2:12-CV-02704-GEB-AC, 2013 WL 1007662 (E.D. Cal. Mar. 13,
  2013) ........................................................................................... 7, 15, 17

*Hartstein v. Rembrandt IP Solutions, LLC*,
  No. 12–2270 SC, 2012 WL 3075084 (N.D. Cal. July 30, 2012) ............... 7, 9

*Hopkinson v. Lotus Dev. Corp.*,
  No. C 95-1389 FMS, 1995 WL 381888 (N.D. Cal. June 20, 1995) ................ 8

*Howard v. Octagon, Inc.*,
  No. C 13-1111 PJH, 2013 WL 5122191 (N.D. Cal. Sept. 13, 2013) ........... 19

*Jones v. GNC Franchising*,
  Inc., 211 F.3d 495 (9th Cir. 2000) ............................................................. 6

*Knapp v. Depuy Synthes Sales Inc.*,
  983 F. Supp. 2d 1171 (E.D. Cal. 2013) .................................................. 7, 18

*Lenscrafters, Inc. v. Liberty Mut. Fire Ins. Co.*,
  No. C 07-2853SBA, 2007 WL 2729411 (N.D. Cal. Sept. 18, 2007) ........... 16

*Loughlin v. Ventraq, Inc.*,
  No. 10-CV-2624-IEG BGS, 2011 WL 1303641 (S.D. Cal. Apr. 5, 2011) ........... 10, 11

*M/S Bremen v. Zapata Off-Shore Co.*,
  407 U.S. 1 (1972) .................................................................................. 7, 8

*Mahoney v. Depuy Orthopedics*,
  No. CIV F 07-1321 AWI SMS, 2007 WL 3341389 (E.D. Cal. Nov. 8,
  2007) ........................................................................................... 7, 9

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
  858 F.2d 509 (9th Cir. 1988) ..................................................................... 7

*Marcelo v. Ivy Ventures, LLC*,
  No. C 10-04609 WHA, 2010 WL 5115437 (N.D. Cal. Dec. 9, 2010)
  (N.D. Cal. Dec. 9, 2010) ..................................................................... 15, 16

iv

*Meras Engineering, Inc. v. CH20, Inc.*,
No. C–11–0389 EMC, 2013 WL 146341 (N.D. Cal. Jan. 14, 2013) ........................ 7, 9

*Meyer v. Howmedica Osteonics Corp.*,
No. 14CV2496 AJB NLS, 2015 WL 728631 (S.D. Cal. Feb. 19, 2015) .................... 11

*Monastiero v. appMobi, Inc.*,
No. C 13-05711 SI, 2014 WL 1991564 (N.D. Cal. May 15, 2014) .............................. 6

*Paster v. Putney Student Travel, Inc.*,
No. CV99-2062 RSWL, 1999 WL 1074120 (C.D. Cal. June 9, 1999) ............... 7, 8, 12

*Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*,
741 F.2d 273 (9th Cir. 1984) ........................................................................................ 7

*Qualcomm, Inc. v. GTE Wireless, Inc.*,
29 F. Supp. 2d 1177 (S.D. Cal. 1999) ........................................................................ 15

*R.A. Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) ..................................................................................... 7, 8

*R.R. St. & Co. v. Transp. Ins. Co.*,
656 F.3d 966 (9th Cir. 2011) ............................................................................... 14, 15

*Rubio v. Capital One Bank*,
613 F.3d 1195 (9th Cir. 2010) .................................................................................... 19

*Russel v. De Los Suenos*,
No. 13-CV-2081-BEN DHB, 2014 WL 1028882 (S.D. Cal. Mar. 17,
2014) ............................................................................................................................ 6

*Schmitt v. JD Edwards World Solutions Co.*,
No. C 01-1009 VRW, 2001 WL 590039 (N.D. Cal. May 18, 2001) ............. 14, 15, 17

*In re Segal*,
No. 11-10998-D, 2011 WL 1582517 (11th Cir. 2011) ............................................... 13

*Spradlin v. Lear Siegler Mgmt. Servs. Co.*,
926 F.2d 865 (9th Cir. 1991) .................................................................................... 7, 8

*Stewart Org. Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) ....................................................................................................... 6

DEFT.'S MEMO. OF P&A'S ISO ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO TRANSFER, OR TO STAY

*Swenson v. T-Mobile United States, Inc.*,
415 F. Supp. 2d 1101 (S.D. Cal. 2006)..........................................................7, 9, 10, 16

*Universal Operations Risk Management, LLC v. Global Rescue, LLC*,
No. C 11–5969 SBA, 2012 WL 2792444 (N.D. Cal. July 9, 2012)..........................7, 9

*Van Dusen v. Barrack*,
376 U.S. 612 (1964).................................................................................................16

*Whipple Industries, Inc. v. Opcon AB*,
No. CV-F-05-0902 REC SMS, 2005 WL 2175871 (E.D. Cal. Sept. 7,
2005) .......................................................................................................................7, 8

**State Cases**

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) .............................................................................................19

**Federal Statutes**

28 U.S.C. § 1404(a) ............................................................................................1, 6, 12

28 U.S.C. § 2201 ........................................................................................................14

**State Statutes**

Business & Professions Code § 16600 ...................................................................9, 10

Business & Professions Code § 17200 .........................................................2, 16, 18, 19

**Rules**

Fed. R. Civ. P. 12(b)(6)...........................................................................................2, 18

**Constitutional Provisions**

United States Constitution Article III .........................................................................18

vi

I.   **INTRODUCTION**

Plaintiff Richard Odello's ("Plaintiff") Complaint is a thinly veiled attempt to circumvent a mandatory forum selection provision that requires litigation of this action in Connecticut. Merely two (2) days after giving notice of his resignation to Defendant Survey Sampling International, LLC ("SSI" or "Defendant"), while still on SSI's payroll, and in a blatant attempt at forum shopping, Plaintiff filed the instant declaratory judgment action in violation of the at-issue agreement's mandatory Connecticut forum selection clause. Accordingly, dismissal and/or transfer is warranted under 28 U.S.C. §1404(a) for the following reasons:

First, the employment agreement's mandatory forum selection clause is prima facie valid, and courts routinely enforce them to dismiss or transfer actions brought by former employees seeking declaratory relief on employment agreements containing such clauses.[1] *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas,* 134 S. Ct. 568, 579 (2013) ("enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system . . . valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.").

Second, where, as here, a valid forum selection clause exists, Plaintiff's choice of forum merits no weight, and Plaintiff must establish that transfer to the forum for which the parties bargained is unwarranted under applicable law.  *Atlantic Marine*, 134 S. Ct. at 581-582. Plaintiff cannot make this showing.

Third, under these circumstances, the Court must presume that the private interest considerations weigh entirely in favor of the pre-selected forum. *See id.* at 582.  As such, the Court need only consider the public interest factors of potentially litigating this matter in Connecticut, albeit such factors "rarely defeat a transfer motion." *Id.*

Fourth, Plaintiff cannot demonstrate any legally justifiable basis to avoid dismissal or transfer.

---

[1] *See, infra*, collection of cases in note 5.

Accordingly, this Court should reject Plaintiff's attempt to clothe himself with California's alleged public policies to analytically leapfrog the mandatory forum selection clause. California federal courts have repeatedly held that courts need not and should not address purported public policy concerns in a choice of law analysis where a valid forum selection clause exists, even in cases involving restrictive covenants.[2]

Independently, this Court should also dismiss this action under the Declaratory Judgment Act and the *Brillhart* doctrine. This Court should abstain from hearing this case to avoid this duplicative litigation in light of the pending, parallel Connecticut action between the parties.

Additionally, Plaintiff's Business & Professions Code section 17200 claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff fails to sufficiently allege an injury in fact.

In the alternative, should the Court determine that dismissal or transfer is not appropriate, SSI respectfully requests that this action be stayed until the completion of the parties' parallel, pending Connecticut action to conserve court and party resources.

## II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.   SSI's Business

SSI is the premier global provider of data solutions and technology for consumers and business-to-business survey research. Complaint at ¶ 5; Declaration of Chris Fanning in Support of Defendant's Motion to Dismiss or, in the Alternative, to Stay ("Fanning Decl."), at ¶ 2. SSI has 30 offices in 21 countries, offering sample, data collection, CATI, questionnaire design consultation, programming and hosting, online reporting and data processing to its clients. Complaint at ¶ 5; Fanning Decl. at ¶ 3. As a result of SSI's strong reputation, training, and marketing efforts, it has forged long-term relationships with over 2,500 clients across the globe. Fanning Decl. at ¶ 5.

SSI's world headquarters is based in Shelton, Connecticut. Fanning Decl. at ¶ 3.

---

[2] *See, infra*, collection of cases in note 5.

2

**B.    Plaintiff's Employment With SSI**

Plaintiff was employed by SSI starting in January 2008. Complaint at ¶ 9; Declaration of Christine Cafferty in Support of Defendant's Motion to Dismiss or, in the Alternative, to Stay ("Cafferty Decl."), at ¶ 3. On March 6, 2013, Plaintiff executed a Confidentiality and Restrictive Covenants Agreement  with SSI (the "Agreement"), which contains certain reasonable confidentiality and post-employment contractual obligations owing to SSI. *See* Complaint, Exhibit A; Cafferty Decl. at ¶ 5, Ex. A. Plaintiff scanned the Agreement and emailed the executed copy of the Agreement to SSI's Shelton, Connecticut office. Cafferty Decl. at ¶ 6. The Agreement was executed by SSI in Connecticut. *Id.*

In the Agreement, Plaintiff agreed to a mandatory Connecticut venue and choice of law provision and consented to the jurisdiction of the Connecticut courts for disputes relating to the Agreement. Complaint, Ex. A, § 16; Cafferty Decl. Ex. A, § 16.

Plaintiff received employment and compensation, access to and receipt of SSI's trade secrets and confidential information, and substantial training in exchange for his execution of the Agreement. *See* Complaint, Ex. A, § 3; Cafferty Decl., Ex. A, § 3.

In conjunction with his steady promotions and central role in SSI's national/international sales, it was necessary for Plaintiff to work regularly with a variety of individuals based out of SSI's world headquarters in Shelton, Connecticut, including:

(a)    Routine trips to Connecticut (six times since January 2015) to attend high-level, management meetings and to receive continued training, including, but not limited to, attendance at SSI's three-day global sales kick-off meeting in January 2016 and SSI's two-day sales leadership team meeting in April 2016, both of which were only attended by SSI's most senior sales people;

(b)    Regular interactions with SSI's President and CEO, Chris Fanning, concerning a variety of company-wide initiatives and strategies, both nationally and internationally;

3

27083533v.1

(c)     Regular interactions with SSI's General Counsel (based in Connecticut) and Human Resources Director (also based in Connecticut) concerning various topics, including, but not limited to, employee performance and compensation matters, as well as client contract negotiations;

(d)     Regular interactions with SSI's Talent Acquisition Associate (based in Connecticut) on recruitment initiatives;

(e)     Regular interactions with Chief Financial Officer and SSI's VP Business Planning and Financial Analysis (both located in Shelton) to discuss client pricing models and rebates;

(f)     All of Plaintiff's interactions with SSI's Finance Department and IT Engineering Department, took place with individuals in Connecticut because each department was based solely in SSI's headquarters in Shelton;

(g)     Through and including at least January 28, 2016, all of Plaintiff's interactions with the Marketing Department took place with individuals in Connecticut because each department was based solely in SSI's headquarters in Shelton; and

(h)     Since 2013, Plaintiff's direct supervisor was always located in Connecticut.

*See* Fanning Decl. at ¶ 22.

Plaintiff further concedes in his filings in the Connecticut action that during his employment with SSI, Plaintiff's sales, management, training, and other job duties and territory responsibilities involved states outside of California.  *See* RJN Ex. C.

In addition to the foregoing contacts to Connecticut, Plaintiff was responsible for certain clients with operations in Connecticut, including Millward Brown (whose Connecticut-based employees Plaintiff interacted with as part of his responsibilities), Brooklawn Strategies (located in Southport, Connecticut), and Acturus (whose corporate headquarters are located in Farmington, Connecticut). *See* Fanning Decl. at ¶ 23.

///

4

27083533v.1

### C.    Plaintiff's Resignation From SSI

On March 2, 2016, Plaintiff accepted an offer from Lucid, LLC, a competitor of SSI. Complaint at ¶ 15.  On May 2, 2016, Plaintiff also announced his intent to resign from SSI effective May 6, 2016. *Id.* at ¶ 16, Ex. B.  Plaintiff's employment with SSI was terminated on May 6, 2016. Declaration of Mary Rusterholz in Support of Defendant's Motion to Dismiss or, in the Alternative to Transfer, or to Stay ("Rusterholz Decl."), at ¶ 5. Plaintiff stayed on SSI's payroll through May 6, 2016. *Id.* at ¶¶ 4-5, Ex. A.

### D.    Plaintiff's California Action

On May 4, 2016, and while still on SSI's payroll, Plaintiff filed the instant action against SSI in the Superior Court for the State of California, County of Los Angeles, seeking declaratory and injunctive relief arising from his belief that SSI would enforce the Agreement. *See* Complaint; Rusterholz Decl. at ¶¶ 4-5.

On May 23, 2016, SSI removed this action to the above-captioned court.

### E.    SSI's Connecticut Action

On May 13, 2016, SSI filed a Complaint and Emergency Motion for Temporary Restraining Order against Plaintiff for breach of contract (i.e., the Agreement) in the District of Connecticut, Case No. 3:16-cv-00730-JCH. *See* SSI's Request for Judicial Notice in Support of Motion to Dismiss or, in the Alternative, to Transfer, or to Stay ("RJN"), Exs. A and D. SSI sought a Temporary Restraining Order against Plaintiff to enjoin him from violating the terms of his Agreement. Mertineit Decl. at ¶ 5.

On May 13, 2016, the Connecticut court issued an Order on Pretrial Deadlines as follows:  Motions to Dismiss due on August 13, 2016; Amended Pleadings due by July 12, 2016; Discovery due by November 12, 2016;  Dispositive Motions due by December 12, 2016. *See* SSI's Request for Judicial Notice, Ex. D, Doc No. 7.

On May 19, 2016, the judge in the Connecticut action, Chief Judge Janet C. Hall, held a Telephonic Status Conference with the parties. Mertineit Decl. at ¶ 6, RJN Ex. B. In response to Plaintiff's counsel's initial suggestion during the status conference that the

1    judge should delay her decision on the enforceability of the Agreement, given the

2    pendency of this action in California, Judge Hall stated that doing so would essentially

3    allow Odello to "win by delay," which she was unwilling to allow. Mertineit Decl. at ¶ 7;

4    RJN Ex. B, 14:10.

5         Accordingly, Judge Hall determined that first and foremost, she would need to

6    swiftly decide the enforceability of the Agreement's choice of law and forum selection

7    provisions before proceeding further.  *Id.* at ¶ 8. Judge Hall indicated that the parties

8    should file briefing on the enforceability of those provisions by Friday, May 27, 2016, at

9    12:00 p.m.  *Id.* Judge Hall also tentatively set oral argument for June 1, 2016, at 2:00 p.m.

10   (although she indicated that she may rule on the enforceability of the choice of law and

11   forum selection provisions on the papers that the parties submit, rather than conducting a

12   hearing on June 1, 2016). *Id.* The parties filed their papers on May 27, 2016, and oral

13   argument on forum selection and choice of law is set for June 1, 2016. *See* RJN, Ex. D,

14   Docs. 28-38. Judge Hall indicated that she would rule on SSI's TRO only after ruling on

15   forum and choice of law issues. *See* RJN, Ex. B, 7:25-8:17, 9:1-6, 22:2-11.

16   **III.    LEGAL ARGUMENT**

17       **A.    The Mandatory Connecticut Forum Selection Clause Requires Dismissal
             Or Transfer Of This Action**

18

19       The mandatory Connecticut forum selection clause requires dismissal or transfer of

20   this action under 28 U.S.C. §1404(a).[3] "[T]he appropriate way to enforce a forum-selection

21   clause pointing to a state or foreign forum is through the doctrine of forum non conveniens."

22   *Atlantic Marine,* 134 S. Ct. at 580.  "In a typical case not involving a forum-selection clause,

23   a district court considering a § 1404(a) motion (or a forum non conveniens motion) must

24   evaluate both the convenience of the parties and various public-interest considerations." *Id.*

25   at 581. "The calculus changes, however, when the parties' contract contains a valid forum-

26   ───────────────────────
27   [3] Dismissal is entirely appropriate here under *Monastiero v. appMobi, Inc.,* No. C 13-05711 SI, 2014 WL
     1991564 (N.D. Cal. May 15, 2014), which enforced a Pennsylvania forum selection clause in employment
28   agreement and dismissed the action under §1404(a). However, for a variety of reasons, courts have chosen to
     transfer.

27083533v.1

selection clause, which 'represents the parties' agreement as to the most proper forum." *Id.* (quoting *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)); *see also Russel v. De Los Suenos*, No. 13-CV-2081-BEN DHB, 2014 WL 1028882 (S.D. Cal. Mar. 17, 2014) (dismissing case based on agreement's Mexico forum selection clause).

The ***single most important factor*** for the Court to consider on a section 1404(a) motion to dismiss or transfer venue in a lawsuit that involves a forum selection clause, is the forum selection clause itself. *Jones v. GNC Franchising*, Inc., 211 F.3d 495, 498 (9th Cir. 2000) ("[T]he presence of a forum selection clause is a 'significant factor' in the court's § 1404(a) analysis."). Indeed, the forum selection clause must be the central focus of the court's analysis. *Stewart Org., Inc.*, 487 U.S. at 29 (a forum selection clause "figures centrally in the district court's calculus").

### 1. The Forum Selection Clause Is Presumptively Valid and Is Enforceable Here

Federal common law governs the enforceability of forum selection clauses in federal court. *R.A. Argueta v. Banco Mexicano*, S.A., 87 F.3d 320, 325 (9th Cir. 1996); *Manetti-Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 513 (9th Cir. 1988) (federal law governs enforcement of forum selection clauses in diversity cases). Forum selection clauses are presumptively valid and a party challenging them "bears a heavy burden of proof" to show that "enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 15 (1972); *see also Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 867 (9th Cir. 1991).

This mandate has been widely recognized and routinely followed in this circuit.[4]

Even in disputes involving purported restrictive covenant provisions alleged to be void under California law, courts have upheld forum selection clauses and either dismissed

---

[4] *See, e.g., Manetti-Farrow*, 858 F.2d at 514-15; *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 279-80 (9th Cir. 1984); *Besag v. Custom Decorators, Inc.*, No. CV08-05463 JSW, 2009 WL 330934, at *2 (N.D. Cal. Feb. 10, 2009); *Paster v. Putney Student Travel, Inc.*, No. CV99-2062 RSWL, 1999 WL 1074120, at *1 (C.D. Cal. June 9, 1999).

27083533v.1

1   or transferred the actions.[5] There are no extraordinary factors preventing the enforcement of

2   the forum selection clause.

3           **a.**    **Plaintiff Cannot Establish That Litigation in Connecticut Is Inconvenient or Improper**

4          A party objecting to the enforcement of a forum selection clause on the ground that

5   the agreed-to forum is unreasonable must meet the "***heavy burden*** of showing that trial in

6   the chosen forum would be so difficult and inconvenient that the party would effectively be

7   denied a meaningful day in court." *Argueta*, 87 F.3d at 325, *quoting Pelleport Investors*, 741

8   F.2d at 28 (emphasis added).  "Courts have routinely rejected the notion that the expense or

9   inconvenience of prosecuting an action in the designated forum rises to the level of depriving

10  one's day in court. Courts recognize that accepting typical arguments about expense and

11  inconvenience would nullify the advantages of forum selection clauses." *Paster*, 1999 WL

12  1074120, at *3.

13         Thus, any inconvenience Plaintiff may experience, if any at all, in travelling to

14  Connecticut is insufficient to overcome the strong legal presumption in favor of enforcing an

15  agreed upon forum selection clause. *See, e.g.*, *Spradlin*, 926 F.2d at 866, 869 (enforcing

16  forum selection clause designating **Saudi Arabia** as forum for suit even though the plaintiff

17  was located in the United States); *Whipple*, 2005 WL 2175871, at *8-*9 (California

18  plaintiff's declaration that business is faced with employee layoffs, loss of reputation and

19  possibly bankruptcy insufficient to overcome application of forum selection clause

20  designating dispute venue as **Sweden**); *Paster*, 1999 WL 1074120, at *3 (rejecting plaintiff's

---

[5] *See, e.g.*, *Knapp v. Depuy Synthes Sales Inc.*, 983 F. Supp. 2d 1171, 1178 (E.D. Cal. 2013) (**dismissed**); *Harrison v. Synthes USA Sales, LLC*, No. 2:12-CV-02704-GEB-AC, 2013 WL 1007662, at *2-4 (E.D. Cal. Mar. 13, 2013)(**dismissed**); *Meras Engineering, Inc. v. CH20, Inc*., No. C–11–0389 EMC, 2013 WL 146341 (N.D. Cal. Jan. 14, 2013) (**dismissed**); *AJZN, Inc. v. Yu*, No. 12–CV–03348–LHK, 2013 WL 97916 (N.D. Cal. Jan. 7, 2013) (**transferred to the District of Delaware**); *Hartstein v. Rembrandt IP Solutions, LLC*, No. 12–2270 SC, 2012 WL 3075084 (N.D. Cal. July 30, 2012) (**dismissed**); *Universal Operations Risk Management, LLC v. Global Rescue, LLC*, No. C 11–5969 SBA, 2012 WL 2792444 (N.D. Cal. July 9, 2012) (**dismissed**); *Mahoney v. Depuy Orthopedics*, No. CIV F 07-1321 AWI SMS, 2007 WL 3341389, at *8 (E.D. Cal. Nov. 8, 2007) (**dismissed**); *Swenson v. T-Mobile United States, Inc.*, 415 F. Supp. 2d 1101, 1104-05 (S.D. Cal. 2006) (**dismissed**); *Whipple Industries, Inc. v. Opcon AB*, No. CV-F-05-0902 REC SMS, 2005 WL 2175871, at *9-*10 (E.D. Cal. Sept. 7, 2005) (**dismissed**);

27083533v.1

argument that small amount of damages, most of evidence and witnesses are in California, and expense of litigating in **Vermont** would effectively deny plaintiff her day in court); *Hopkinson v. Lotus Dev. Corp.*, No. C 95-1389 FMS, 1995 WL 381888, at *3 (N.D. Cal. June 20, 1995) (financial hardship that California plaintiffs allegedly would suffer if forced to litigate in **Massachusetts** "is insufficient to establish that the designated forum is gravely difficult and inconvenient").

There are no facts, circumstances, or evidence of which SSI is aware by which Plaintiff can show that litigation of his dispute with SSI would "be so manifestly and gravely inconvenient to him that he will effectively be deprived of a meaningful day in court," particularly where Plaintiff consented in his Agreement specifically to personal jurisdiction of the courts in Connecticut. *Bremen*, 407 U.S. at 19. Moreover, SSI's global headquarters and principal place of business are in Connecticut, Plaintiff routinely visited Connecticut to attend high-level, management meetings and to receive continued training, regularly interacted with SSI personnel and clients with operations in Connecticut, and directly reported to a supervisor in Connecticut. *See* Fanning Decl. at ¶¶ 22-23. Indeed, Plaintiff concedes that in his prior employment with SSI and in his ongoing employment with his new employer, he is responsible for providing services in numerous states outside of California. *See* RJN Ex. C. Thus, enforcing the mandatory forum selection clause will not deprive Plaintiff from any meaningful day in court.

### b. Enforcement of the Forum Selection Clause Does Not Contravene Any Strong Public Policy of California

Requiring Plaintiff to pursue his claims in Connecticut would not be contrary to California public policy. In the context of litigation involving restrictive covenants in agreements, California federal courts routinely enforce forum selection clauses while rejecting plaintiffs' arguments that enforcing the **forum selection clause** would violate California's public policy regarding non-competition clauses. *See Meras Eng.,* 2013 WL 146341, *14; *AJZN*, 2013 WL 97916, at *4; *Hartstein*, 2012 WL 3075084, at *6; *Universal Operations*, 2012 WL 2792444, at *6; *Mahoney*, 2007 WL 3341389, at *8; *Swenson*, 415 F.

9

1   Supp. 2d at 1104-1105.  "The forum selection clause determines where the case will be

2   heard.  It is separate and distinct from choice of law provisions that are not before the court. .

3   . .  The 'question is not whether the application of the forum's law would violate the policy

4   of the other party's state, but rather, whether enforcement of the forum selection agreement

5   would violate the policy of the other party's state as to the forum for litigation of the

6   dispute." *Mahoney*, 2007 WL 3341389, at *8, *citing Swenson*, 415 F. Supp. 2d at 1105.

7          The facts in *Swenson* are particularly instructive. *See Swenson*, 415 F. Supp. 2d at

8   1102-03. In that case, T-Mobile filed suit in Washington state court to enforce non-compete

9   provisions in its agreement with Swenson, T-Mobile's former chief operating officer. *Id*.

10  Two days later, Swenson filed suit in California state court seeking a declaration that the

11  non-compete provisions in her employment contracts were invalid under Business &

12  Professions Code § 16600. *Id*. The day after the California action was filed, T-Mobile

13  removed it to federal court on diversity grounds. *Id.* Shortly thereafter, the Washington state

14  court issued a preliminary injunction and found that Washington law applied and that

15  Washington law permitted the use of reasonable non-compete agreements to protect an

16  employer's confidential information and trade secrets. *Id*.

17         Ultimately, the California district court dismissed the action, holding that venue for

18  the dispute was properly in Washington.  Swenson argued that defendant's motion to dismiss

19  was "an attempt to escape California law and public policy barring [defendant's] illegal

20  employment prohibition." *Swenson*, 415 F. Supp. 2d at 1104.  The court rejected her

21  argument, explaining that "a Washington court's application of Washington law to the

22  matter at hand may arguably lead to a result conflicting with provisions of § 16600, Swenson

23  was free to, and in fact, did argue for the application of California law . . . the Washington

24  court could have applied California law if it found application appropriate." *Id; see also*

25  *Besag*, 2009 WL 330934, at *4 ("simply because Oregon ostensibly provides less favorable

26  remedies compared with California in not sufficient in and of itself to invalidate the forum

27  selection clause"); *see also AJZN*, 2013 WL 97916, at *4 (rejecting argument that enforcing

28

10

27083533v.1

forum selection clause would contravene California public policy regarding noncompete agreements and explaining "a Delaware court might apply California law …[or]… some other law that would be equally protective of the interests of California citizens.").

The decision in *Loughlin v. Ventraq, Inc.*, No. 10-CV-2624-IEG BGS, 2011 WL 1303641 (S.D. Cal. Apr. 5, 2011) is also instructive. There, the plaintiff signed an employment agreement that contained both a restrictive covenant and a New Jersey forum selection clause. *Id.* at *1. Following his termination, the plaintiff brought suit in California alleging, among other claims, that his restrictive covenant was unenforceable under California law. *Id.* at *2. The district court dismissed the plaintiff's claims based on the forum selection clause, rejecting the plaintiff's argument that "enforcing the forum selection clause [would] contravene California's strong public policy against post-employment noncompete agreements. In rejecting the argument, the court expressly held:

> Plaintiff does not challenge the forum selection clause directly, only its possible effect: the *application of New Jersey law*. Thus, Plaintiff's argument conflates the forum-selection and choice-of-law inquiries. Even assuming, arguendo, the application of New Jersey law may lead to a result that contravenes California policy, Plaintiff makes no showing that enforcing the venue provisions presents any potential for such a conflict. Therefore, the forum selection provision is valid and enforceable.

*Id.* at *7 (emphasis in original); *see also Meyer v. Howmedica Osteonics Corp.*, No. 14CV2496 AJB NLS, 2015 WL 728631, at *13 (S.D. Cal. Feb. 19, 2015) (enforcing forum selection clause in California-based employee's restrictive covenant agreement because "the proper inquiry is the reasonableness of the forum selection clause itself, not the reasonableness of the effect of enforcing it.").

The result in this case should be no different. There is no reason to believe that a Connecticut court will not or cannot entertain Plaintiff's choice of law arguments or that it cannot apply California law, if it is determined that California law governs, which it does not. Accordingly, there is no support for the claims that the forum selection clause in the Agreement violates public policy and should not be enforced.

DEFT.'S MEMO. OF P&A'S ISO ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO TRANSFER, OR TO STAY

27083533v.1

c.   **Public Policy Favors the Enforcement of the Forum Selection Clause**

In *Carnival Cruise Lines*, the Supreme Court discussed the beneficial purpose of an enforceable forum selection clause, especially in the case of a cruise line that interacts with passengers from all over the world. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593, 111 S. Ct. 1522, 1527 (1991). Without an enforceable forum selection clause, the Court noted, the cruise line would be exposed to litigation in innumerable fora. *Id.* The *Carnival Cruise Lines* Court found that a forum selection clause had the salutary effect of dispelling confusion about where a case should be brought, thereby conserving judicial and litigants' resources. *Id.* The Court also noted that a cruise line's passengers benefit from a forum selection clause in the form of reduced fares reflecting the reduced litigation expenses resulting therefrom. *Id.* at 593-94, 111 S. Ct. at 1527.

The *Carnival Cruise Lines* analysis applies with equal force here to the Agreement. In light of the broad geographical scope of SSI's business, SSI has a legitimate interest in narrowing its obligation to defend itself to a single forum. *See Carnival Cruise Lines*, 499 U.S. at 593, 111 S. Ct. at 1527 (enforcing forum selection clause and reasoning that a cruise line "has a special interest in limiting the fora in which it potentially could be subject to suit" because a cruise ship "typically carries passengers from many locales," thus potentially subjecting the cruise line "to litigation in several different fora"); *Paster*, 1999 WL 1074120, at *2 (forum selection clause allowed defendant, which [contracted] with individuals throughout the world" and was "potentially subject to suit in many different fora," to "limit its susceptibility to litigation all over the world, thus saving it money").

The pertinent and material issue for purposes of this motion concerns the enforcement of the forum selection clause, which is a distinct and separate issue from the enforceability of the Agreement's other provisions under California law.

///

///

12

2. **The Atlantic Marine Analysis Weighs Heavily in Favor of Dismissal or Transfer**

As here, the presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways. *Atlantic Marine*, 134 S. Ct. at 581. *First*, the plaintiff's choice of forum merits no weight, and instead, the plaintiff "bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* at 581-582. *Second*, the Court should not consider arguments about the parties' private interests. *Id.* at 582. *Finally*, when "a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules. *Id.* at 582.

a. **Plaintiff's Choice of Forum Bears No Weight**

When a plaintiff signs an agreement permitting him or her to bring suit only in a specified forum, the plaintiff has effectively exercised "venue privilege" before a dispute arises. *Atlantic Marine,* 134 S. Ct. at 581-82. Only that initial choice deserves deference, and the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed. *Atlantic Marine,* 134 S. Ct. at 582.

b. **The Court Need Only Consider the Public Interest Factors In Evaluating the Forum Selection Clause, And Those Factors Do Not Defeat Dismissal or Transfer of This Action**

The Court need only consider the public interest factors when analyzing a forum selection clause. *Atlantic Marine*, 134 S. Ct. at 582. A party acting in violation of a forum selection clause bears the burden of showing that public interest factors overwhelmingly disfavor a transfer. *Atlantic Marine*, 134 S. Ct. at 583.[6] Nonetheless, "[b]ecause public-interest factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases. *Atlantic Marine*, 134 S. Ct. at 574; *see also In re Segal,* No. 11-10998-D, 2011 WL 1582517, *1 (11th Cir. 2011).

---

[6] Private interest factors that the Court should ignore include the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *See, e.g.*, *Gulf Oil Co. v. Gilbert*, 330 U.S. 501, 508-09 (1947).

27083533v.1

Public interest factors which the Court can consider include, "the administrative difficulties flowing from court congestion; the 'local interest in having localized controversies decided at home'; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Atlantic Marine,* 134 S. Ct. at 583.

Plaintiff cannot meet his heavy burden to show that the public interest factors overwhelmingly disfavor enforcement of the mandatory forum selection clause. The local interest factor favors having the controversy in Connecticut because SSI's headquarters are in Connecticut and, thus, the harm (including, *inter alia*, lost revenue) that SSI would suffered if Plaintiff was to violate and/or interfere with the Agreement would significantly affect SSI's business in Connecticut.

Further, the Agreement provides that Connecticut law shall govern. Thus, there is an interest in having the trial in Connecticut, which is at home with the law that the Agreement provides governs the instant action. The public interest factors support dismissing this action. Plaintiff cannot carry his heavy burden of showing that public interest factors overwhelmingly disfavor a dismissal.

If this Court does not dismiss this action, it should transfer this action to Connecticut under the mandatory forum selection clause for the same reasons discussed above. *See Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas,* 134 S. Ct. 568, 579 (2013) ("enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system . . . valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases.").

## B. The Court Should Decline Jurisdiction Under The Declaratory Judgment Act

California federal courts routinely decline jurisdiction of cases under the Declaratory Judgment Act to avoid the needless determination of state law issues and duplicative

14

litigation. The Declaratory Judgment Act, under which Plaintiff seeks relief, provides that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. In light of the "permissive nature of the Declaratory Judgment Act," California courts routinely decline to exercise jurisdiction under appropriate circumstances. *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 975 (9th Cir. 2011).

In *Brillhart v. Excess Insurance Company of America*, the United States Supreme Court held: "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." 316 U.S. 491, 62 S. Ct. 1173 (1942).

The *Brillhart* rule has been extended by California courts to apply equally to parallel federal court proceedings. *See*, *e.g.*, *Schmitt v. JD Edwards World Solutions Co.*, No. C 01-1009 VRW, 2001 WL 590039, at *2-3 (N.D. Cal. May 18, 2001) (declining jurisdiction under Declaratory Judgment Act in favor of subsequent breach of contract action filed by employer in federal court); *Qualcomm, Inc. v. GTE Wireless, Inc.*, 29 F. Supp. 2d 1177, 1179 (S.D. Cal. 1999) (declining jurisdiction in favor of pending federal court action "[f]or the same reasons that federal courts regularly abstain from hearing declaratory relief cases when parallel state cases are pending"); *Gribin v. Hammer Galleries, Div. of Hammer Holdings, Inc.*, 793 F. Supp. 233, 234 n.1 (C.D. Cal. 1992) (dismissing first-filed Declaratory Judgment Action in favor of subsequently-filed federal court action, and noting that "[t]he same rule [of *Brillhart*] applies where the parallel action is pending in another federal district."); *First Fishery Dev. Serv. v. Lane Labs USA*, No. CIV. 97-1069-R, 1997 WL 579165, at *2 (S.D. Cal. July 21, 1997) (same).

Courts applying *Brillhart* consider three factors in determining whether to decline jurisdiction under the Declaratory Judgment Act: (1) whether dismissal would avoid

15

"needless determination of state law issues"; (2) whether dismissal would discourage "forum shopping"; and (3) whether dismissal would avoid "duplicative litigation." *R.R. St. & Co.*, 656 F.3d at 975.

California courts routinely apply these three factors to dismiss declaratory judgment actions filed by California-resident employees, like Plaintiff, who attempt to avoid restrictive covenant obligations and parallel breach-of-contract proceedings pending in other jurisdictions.[7] Even if the Connecticut federal district court were to apply that state's choice-of-law rules rather than California's choice-of-law rules, "this is not a dispositive distinction on whether this court's abstention would be proper." *Marcelo*, 2010 WL 5115437, at *8. "[E]xact parallelism" is not required for two proceedings to be "parallel" under the abstention rules discussed herein. It is sufficient if the two proceedings are "substantially similar." *Id. quoting Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). The Court should decline jurisdiction for the same reasons here.

### a. Dismissing This Action Would Avoid Needless Determination of Connecticut State Law

The first *Brillhart* factor favors declining jurisdiction over this action to avoid needlessly determining issues of Connecticut state law. The parties agreed that the agreement will be governed by Connecticut law. Although Plaintiff will likely argue,

---

[7] *See, e.g.*, *Harrison v. Synthes USA Sales, LLC*, No. 2:12-CV-02704-GEB-AC, 2013 WL 1007662, at *2-4 (E.D. Cal. Mar. 13, 2013) (dismissing employee's declaratory judgment action in California in favor of breach-of-contract action by employer in Pennsylvania); *Schmitt*, 2001 WL 590039, at *3 (dismissing declaratory action by California resident in favor of former employer's action to enforce restrictive covenants, filed in Colorado, because plaintiff in California "simply wanted to wrest the choice of forum away from the allegedly aggrieved party"); *DeFeo v. Procter & Gamble Co.*, 831 F. Supp. 776, 778 (N.D. Cal. 1993) (dismissing California declaratory judgment action, even though filed one day before Ohio state court action by former employer, because "were this court to proceed, it would be making needless decisions of state law, rewarding forum shopping, and engaging in duplicative litigation"); *Marcelo v. Ivy Ventures, LLC*, No. C 10-04609 WHA, 2010 WL 5115437, *7-9 (N.D. Cal. Dec. 9, 2010) (N.D. Cal. Dec. 9, 2010) (denying motion to enjoin parallel state court proceedings in Virginia regarding Virginia-based company's enforcement of restrictive covenants against former employee residing in California); *Google, Inc. v. Microsoft Corp.*, 415 F. Supp. 2d 1018, 1019-20 (N.D. Cal. 2005) (staying California action for declaratory relief in favor of former employer's first-filed action in Washington for breach of employment contract and tortious interference with contractual relations); *Swenson v. T-Mobile USA, Inc.*, 415 F. Supp. 2d 1101, 1106 (S.D. Cal. 2006) (dismissing California declaratory judgment action in favor of former employer's first-filed state court action in Washington to enforce non-competition agreement).

1   contrary to the Agreement's choice-of-law clause, that California law, rather than

2   Connecticut law, should apply to this dispute, the Court need not decide the choice-of-law

3   issue at this juncture to decline jurisdiction under *Brillhart*. *See, e.g., Lenscrafters, Inc. v.*

4   *Liberty Mut. Fire Ins. Co.*, No. C 07-2853SBA, 2007 WL 2729411, at *6 (N.D. Cal. Sept.

5   18, 2007); *see also Fieldturf USA, Inc. v. Blue Sky Int'l, Inc.*, No. CIV S-11-2035 KJM-KJN,

6   2012 WL 4510671, at *5 (E.D. Cal. Sept. 30, 2012).

7   Plaintiff's separate claim for relief under Business and Professions Code Section

8   17200 is immaterial to the *Brillhart* analysis. *See Marcelo*, 2010 WL 5115437, at *8 ("[T]he

9   mere existence of a separate claim brought by plaintiff under Section 17200 does not clearly

10  distinguish this action from *Google*, *Swenson*, and the other decisions" declining jurisdiction

11  under the Declaratory Judgment Act).

12  In sum, the District of Connecticut is the proper forum to decide the issues of

13  Connecticut law present in this dispute. *See Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964)

14  ("There is an appropriateness … in having the trial of a diversity case in a forum that is at

15  home with the state law that must govern the case, rather than having a court in some other

16  forum untangle problems in conflict of laws, and in law foreign to itself.").

### b. Dismissing This Action in Favor of the Connecticut Action Would Discourage Forum Shopping

19  Even in the absence of a forum-selection clause, California courts routinely dismiss

20  declaratory judgment actions seeking to invalidate restrictive covenant agreements filed to

21  deprive the natural plaintiff, the employer, of its choice of forum.[8]  While Plaintiff may

22  likely argue that California law should govern this dispute, there is no reason why Plaintiff

---

[8] *See, e.g., DeFeo*, 831 F. Supp. at 778 (dismissing lawsuit filed by employee on the day of his resignation to avoid restrictive covenant agreement, in favor of subsequently-filed action by employer, because, "were this court to proceed, it would be … rewarding forum shopping…."); *Schmitt*, 2001 WL 590039, at *2 (dismissing former employee's declaratory judgment lawsuit filed in anticipation of employer's breach-of-contract action in Colorado, noting that dismissal is appropriate to "prevent[ ] forum shopping by a declaratory plaintiff who files suit in anticipation of being sued by a natural plaintiff"); *Google*, 415 F. Supp. 2d at 1021 ("*DeFeo* and *Schmitt* are instructive. Just as those courts declined to grant declaratory relief because doing so would reward forum shopping, this court elects to stay the action by Google and Lee requesting declaratory relief, which Google and Lee admit they filed to try to secure a California forum.").

1  cannot make those same conflict of law arguments to the Connecticut federal district court.

2  Simply, Plaintiff's actions suggest a thinly veiled attempt to forum shop and to deprive SSI

3  of its agreed choice of forum.

        **c.**  **Dismissing This Action in Favor of the Connecticut Action Will Avoid Duplicative Litigation and Waste of Judicial Resources**

6        Considerations of judicial economy also weigh in favor of dismissal of this action. To

7  discouraging forum shopping, courts decline jurisdiction under the Declaratory Judgment

8  Act where doing so will avoid duplicative litigation. *See, e.g., First Fishery*, 1997 U.S. Dist.

9  LEXIS 11231, at *12 n.3 ("The Court also notes that dismissing Plaintiff's case serves the

10  interests of judicial economy and avoiding duplicative litigation"); *DeFeo v. Procter &*

11  *Gamble Co.*, 831 F. Supp. 776, 778 (N.D. Cal. 1993) (dismissing first-filed California

12  declaratory judgment action regarding enforceability of non-competition agreement in favor

13  of subsequent Ohio action by former employer, because "were this court to proceed, it would

14  be . . . rewarding forum shopping, and engaging in duplicative litigation"); *Harrison v.*

15  *Synthes USA Sales, LLC*, No. 2:12-CV-02704-GEB-AC, 2013 WL 1007662, at *3 (E.D.

16  Cal. Mar. 13, 2013) ("Harrison states he 'filed this [federal] lawsuit the day he resigned his

17  employment with [Synthes] for fear that [Synthes] would seek to haul him into court in

18  Pennsylvania ... [to] enforce restrictive covenants against him which plainly violate

19  California law.' … This statement smacks of forum shopping in light of the forum-selection

20  clause in the 2007 Agreement") (citations omitted); *Knapp v. Depuy Synthes Sales Inc.,* 983

21  F. Supp. 2d 1171, 1177 (E.D. Cal. 2013) ("The court also finds that declining jurisdiction

22  would save judicial resources by avoiding duplicative litigation.").

23        The Court should exercise its discretion to dismiss this lawsuit for the very reasons

24  identified in the cases discussed above: to discourage forum-shopping and avoid duplicative

25  litigation. Rather than abide by the forum selection clause, Plaintiff filed this suit in

26  California. Indeed, Plaintiff filed this lawsuit only two days after giving notice of his

27  resignation and the day after his employment was terminated. Given these circumstances,

28

27083533v.1

Plaintiff's attempt to forum shop are self-evident. Such tactical maneuvers, which are designed to deprive the natural plaintiff—SSI—of its choice of forum, have been prohibited by the Supreme Court and should not be endorsed by this Court. Moreover, the Connecticut action, which was filed shortly after this action, presents the same matters at issue here. Accordingly, dismissing this action will avoid duplicative litigation without unduly prejudicing Plaintiff's right to obtain a prompt ruling regarding the enforceability of the Agreement. For these reasons, the Court should decline jurisdiction under the Declaratory Judgment Act.

### C.   Plaintiff Fails To State A Claim For Purported Violations Of Bus. & Prof. Code Section 17200

Additionally, Plaintiff's Business and Professions Code section 17200 claim should be dismissed under Federal Rule of Civil Procedure 12(b)(6) because Plaintiff lacks standing. Specifically, Plaintiff fails to sufficiently allege an injury in fact.

In order to state a claim for violation of section 17200, a plaintiff must allege that: (1) plaintiff has lost money or property sufficient to constitute an injury in fact under Article III of the United States Constitution; and (2) there is a causal connection between the defendant's alleged violation and the plaintiff's injury in fact. *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1203-04 (9th Cir. 2010).  "An absence of facts describing the money or property allegedly lost is ***fatal*** to a plaintiff's Section 17200 claim." *Howard v. Octagon, Inc.*, No. C 13-1111 PJH, 2013 WL 5122191, at *7 (N.D. Cal. Sept. 13, 2013) (emphasis added); *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 323 (2011) ("Proposition 64 requires that a plaintiff have 'lost money or property' to have standing to sue. The plain import of this is that a plaintiff now must demonstrate some form of economic injury.").[9]

Here, Plaintiff has not sufficiently alleged the existence of an injury in fact, nor has he

---

[9] The complaint must also provide "more than labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The "mere plausibility of misconduct" is not enough to state a viable claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009).  Likewise, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 1949-50.

1  shown a causal connection between SSI's purported violation and any damages he has

2  suffered. There is no indication given in the Complaint as to what actual harm Plaintiff

3  claims to have suffered as a result of SSI's purported section 17200 violation. Plaintiff

4  vaguely alleges that he lost compensation and harm to reputation, but does not identify how

5  much compensation was lost, the type and nature of the compensation, or that it was not

6  merely prospective business that he hoped to obtain. Indeed, Plaintiff's Complaint reflects

7  that he was able to commence employment with Lucid and he continues to work for Lucid.

8       Plaintiff is simply seeking to deprive SSI of the contractually agreed and mandatory

9  forum selection clause. Thus, this claim should be dismissed.

### D. This Court Should Stay This Action Pending Resolution Of The Connecticut Action If This Court Declines To Dismiss Or Transfer This Action

12      If this Court does not dismiss or transfer this action, it should stay this case until the

13  Connecticut court resolves the Connecticut action. *Colo. River Water Conservation Dist. v.*

14  *United States*, 424 U.S. 800, 818 (1976) ("As between federal district courts, however,

15  though no precise rule has evolved, the general principle is to avoid duplicative litigation.")

16  A stay of this action will not prejudice Plaintiff because all issues between the parties may be

17  resolved in the Connecticut federal district court.  In contrast, allowing this action to proceed

18  in California forces the parties to litigate the same dispute in two jurisdictions and creates the

19  risk that inconsistent obligations may be imposed on the parties. Thus, this action should be

20  stayed pending resolution of the Connecticut action, including any appeals.

## IV.  CONCLUSION

22      For the foregoing reasons, SSI respectfully asks this Court to dismiss this action,

23  transfer it to the District of Connecticut, or stay it pending the resolution of the

24  Connecticut action, including any appeals.

DATED: May 31, 2016                    SEYFARTH SHAW LLP

By:    /s/ Robert B. Milligan
Robert B. Milligan / D. Joshua Salinas /
Amy A. Abeloff -- Attys for Deft.
SURVEY SAMPLING INTL., LLC

20